## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSHUA JONES**                                                  **CIVIL ACTION**

**VERSUS**                                                        **NO.  22-443**

**KILOLO KIJAKAZI, COMMISSIONER OF THE**            **SECTION: "G"(3)**
**SOCIAL SECURITY ADMINISTRATION**

### ORDER AND REASONS

Before the Court are Plaintiff Joshua Jones' ("Jones") objections[1] to the Report and

Recommendation of the United States Magistrate Judge assigned to the case.[2] Jones filed this

action pursuant to 42 U.S.C. § 405(g) for review of a decision of Defendant, the Commissioner of

the Social Security Administration (the "Commissioner"), denying Jones' claim for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act (the "Act").[3] The parties then filed cross-motions for summary judgment.[4]

The Magistrate Judge recommended that Jones' motion for summary judgment be denied, the

Commissioner's motion for summary judgment be granted, the Administrative Law Judge's

("ALJ") decision be affirmed, and the case be dismissed with prejudice.[5] Jones objects, arguing

that: (1) the retroactive application of Listing 1.15 to his case violates the Fourteenth Amendment;

---

[1] Rec. Doc. 32.

[2] Rec. Doc. 31.

[3] Rec. Doc. 2.

[4] Rec. Docs. 14, 18.

[5] Rec. Doc. 31.

1

(2) the ALJ erred by failing to offer any meaningful rationale explaining why the relevant Listing was not medically equaled; and (3) the ALJ erred by ignoring the effect of Jones' treatment on his ability to sustain full-time employment.[6] Having considered Jones' objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, the Court overrules Jones' objections, adopts the Magistrate Judge's Report and Recommendation, denies Jones' motion for summary judgment, grants the Commissioner's motion for summary judgment, and dismisses this action with prejudice.

## I. Background

### A.    Procedural History

In October 2019, Jones filed an application for SSI and DBI alleging a disability onset date of February 22, 2018.[7] Jones alleged disability due to the following conditions: disc herniation bulging and derangement in the cervical and lumbar spine at levels L4-5, L5-S1, C5-6, and C7, blurring vision, diabetes, neuropathy, broken great toe, high blood pressure, and high cholesterol.[8] After the claims were denied at the agency level,[9] Jones requested a hearing before an ALJ.[10]

---

[6] Rec. Doc. 32.

[7] Adm. Rec. at 206–07.

[8] *Id.* at 80.

[9] *Id.* at 76–79, 102–03.

[10] *Id.* at 158–60.

On August 5, 2021, Jones, who was represented by an attorney, testified at a telephonic hearing before an ALJ.[11] A vocational expert also testified.[12] On October 6, 2021, the ALJ issued a decision denying Jones' claim for benefits.[13] At the hearing, Jones amended the alleged disability onset date to December 10, 2019.[14]

The ALJ analyzed Jones' claim pursuant to the five-step sequential evaluation process.[15] As an initial matter, the ALJ determined that Jones met the insured status requirements of the Act

---

[11] *Id.* at 42–63.

[12] *Id.* at 64–74.

[13] *Id.* at 15–23.

[14] *Id.* at 15.

[15] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

through December 31, 2021.[16] At step one, the ALJ concluded that Jones had not engaged in substantial gainful activity since December 10, 2019, the amended alleged onset date.[17] At step two, the ALJ concluded that Jones had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with radiculopathy, diabetes mellitus with neuropathy, and a left shoulder SLAP tear and tendinopathy.[18] The ALJ determined that Jones' hypertension, hyperlipidemia, blurred vision, and a left great toe injury were not severe because they caused no more than minimal limitations on his ability to perform basic work-related activities.[19] Nevertheless, the ALJ considered all of Jones' medically determinable impairments, including those that were not severe, when assessing Jones' residual functional capacity ("RFC").[20] At step three, the ALJ found that Jones did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[21]

At step four, the ALJ found that Jones had the RFC to perform light work with the following limitations: (1) he can only stand or walk four hours in an eight-hour work day; (2) he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs; (3) he can only occasionally stoop, kneel, crouch, crawl, or balance when walking on narrow, slippery, or uneven surfaces; (4) he can only occasionally reach overhead, handle, finger, or feel with the

---

[16] Adm. Rec. at 17.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 18.

[20] *Id.*

[21] *Id.*

non-dominant left upper extremity; (5) he must avoid exposure to workplace hazards, such as unprotected heights and dangerous moving machinery.[22]

At step four, the ALJ found that Jones was unable to perform any past relevant work.[23] At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Jones could perform.[24] Accordingly, the ALJ concluded that Jones was not disabled from December 10, 2019 through the date of the decision.[25]

Jones requested review of the decision by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on January 4, 2022.[26] On February 21, 2022, Jones filed a Complaint in this Court seeking judicial review pursuant to Section 405(g) of the Act.[27] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On July 8, 2022, the Commissioner answered the Complaint.[28]

On August 29, 2022, Jones filed a motion for summary judgment.[29] Jones raised three issue on appeal: (1) the retroactive application of the Listing 1.15 to his case violates the Fourteenth Amendment; (2) the ALJ erred by failing to offer any meaningful rationale explaining why the

---

[22] *Id*. at 19.

[23] *Id*. at 21.

[24] *Id*. at 22.

[25] *Id*. at 23.

[26] *Id*. at 1–6.

[27] Rec. Doc. 2.

[28] Rec. Doc. 10.

[29] Rec. Doc. 14.

relevant Listing was not medically equaled; and (3) the ALJ erred by ignoring the effect of Jones' treatment on his ability to sustain full-time employment.[30] On November 9, 2022, the Commissioner filed a cross-motion for summary judgment.[31] The Commissioner argued that the ALJ properly considered the revised Listing 1.15 and that the ALJ properly considered the medical evidence.[32] On December 13, 2022, Jones filed a reply brief in further support of his motion for summary judgment.[33]

### B.    *The Magistrate Judge's Report and Recommendation*

On June 26, 2023, the Magistrate Judge recommended that Jones' motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, the ALJ's decision be affirmed, and Jones' case be dismissed with prejudice.[34]

First, the Magistrate Judge determined that applying the new Listing 1.15 to Jones' application did not result in impermissible retroactive effects.[35] The Magistrate Judge thoroughly analyzed the caselaw on this issue, and she found that rights possessed by Jones when he acted would not be impaired by application of new Listing 1.15 to his application for benefits.[36]

---

[30] Rec. Doc. 14-3 at 5.

[31] Rec. Doc. 18.

[32] Rec. Doc. 18-1 at 11, 14.

[33] Rec. Doc. 29.

[34] Rec. Doc. 31.

[35] *Id.* at 25.

[36] *Id.* at 19–25.

Second, the Magistrate Judge addressed Jones' argument that the ALJ erred in failing to explain why Jones' impairments were not equivalent to the Listings.[37] The Magistrate Judge pointed out that Jones did not meet the requirements of Listing 1.15 because he did not have a documented need for a walker, an inability to use one upper extremity along with a documented medical need for a one-handed, hand-held assistive device, or an inability to use both upper extremities.[38] The Magistrate Judge pointed out that the use of such a device reflects functional limitations in ambulation, but throughout the relevant period, Jones' physical therapist noted a functional gait.[39] Therefore, the Magistrate Judge found that substantial evidence supported the ALJ's conclusion that Jones' impairments were not equivalent to Listing 1.15..[40]

Third, the Magistrate Judge determined that the ALJ properly accounted for the effect of Jones' medical treatment on his ability to sustain gainful employment.[41] The Magistrate Judge found no indication in the physical therapy record that such therapy would interfere with Jones' workday.[42] Therefore, the Magistrate Judge found that Jones was not entitled to relief on this issue.[43]

---

[37] *Id.* at 26.

[38] *Id.* at 27.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 29.

[42] *Id.*

[43] *Id.*

## II. Objections

### A.    *Jones' Objections to the Report and Recommendation*

Jones objects to the Magistrate Judge's Report and Recommendation.[44] Jones argues that the Magistrate Judge failed to properly assess the constitutionality of the retroactive application of the Listings.[45] Jones asserts that it was unconstitutional for the Commissioner to apply the new Listings to all claims pending on April 2, 2021 "as it would lead to disparate results for otherwise identical applications arbitrarily based on the date of adjudication."[46] Jones contends that his rights were substantively altered by applying Listing 1.15, rather than the prior version Listing 1.04, to his claims because the new Listing raised the burden of proof of disability.[47] Jones asserts that it is uncontested that he has multi-level lumbar and cervical pathology with disc herniations at C6-7, L4-5 and L5-S1 resulting in "marked stenosis," impingement of the S1 nerve roots, deficits on physical exam which included impaired gait, an inability to stoop or bend, limited cervical and lumbar range of motion, motor weakness in the left upper and lower extremities, reflex and sensory loss, and a positive straight leg raise test.[48] Therefore, Jones argues that his condition meets or equals the requirements of Listing 1.04.[49]

---

[44] Rec. Doc. 32.

[45] *Id.* at 1.

[46] *Id.* at 1–2.

[47] *Id.* at 2.

[48] *Id.* at 2–3.

[49] *Id.* at 3.

Jones contends that the sole difference in Listing 1.15 is the medical necessity of a "hand held assisting device."[50] Jones argues that Listing 1.15 should not have applied, and that its application denied him equal protection under the law.[51] Jones asserts that "[t]he Commissioner has arbitrarily implemented material changes to the requirements for disability which would lead to disparate results for identical claimants solely due to the date their claims were decided."[52] Jones also argues that the Magistrate Judge failed to consider unusual circumstances that made the application of the new Listing to Jones' claim unjust such as the fact that his application was pending for 16 months before Listing 1.15 went into effect.[53] For these reasons, Jones argues that "the retroactive application of the Listings was arbitrary and irrational as it has the effect of applying different standards to the same claim as well as different standards to identical or similar claims, solely and arbitrarily based on the date the claim is adjudicated."[54]

Next, Jones asserts that the ALJ failed to offer any meaningful rationale explaining why the relevant Listing was not medically equaled.[55] Jones claims that the Magistrate Judge improperly substitutes her own judgment for that of the ALJ in evaluating whether Jones' condition equals the Listing.[56] Jones points out that the Magistrate Judge found that Jones'

---

[50] *Id.*

[51] *Id.* at 3–4.

[52] *Id.* at 4.

[53] *Id.* at 4–5.

[54] *Id.* at 6.

[55] *Id.*

[56] *Id.*

condition does not equal the Listing because there was no documented medical need for a walker, but Jones asserts that this is the requirement for meeting the Listing, not equaling the Listing.[57] Jones asserts that the ALJ erred because he failed to offer an explanation as to why Listing 1.15 was not medically equaled.[58]

Finally, Jones argues that the Magistrate Judge made an erroneous factual finding by stating that there was no suggestion that physical therapy and surgery were constant treatment that affected Jones' ability to work on a sustained basis.[59] Jones points to the vocational expert's testimony that "if the person had to miss all or part of a workday to receive medical treatment 38 times over a period of 20 months in addition to ordinary absences," that person would not be able to maintain competitive employment.[60] Jones asserts that he received physical therapy for a period of 10 months, and he underwent surgery a few months before beginning physical therapy.[61] Therefore, Jones contends that he has established a period of 12 months of significant, continuous treatment.[62] Accordingly, Jones argues that the Magistrate Judge's conclusion that this treatment would not have presented an obstacle to Jones' ability to sustain full time employment factually incorrect and an improper substitution of the Magistrate Judge's judgement for that of the ALJ.[63]

---

[57] *Id.* at 7.

[58] *Id.* at 9.

[59] *Id.*

[60] *Id.*

[61] *Id.* at 10.

[62] *Id.*

[63] *Id.* at 9–10.

## B.       The Commissioner's Response

The Commissioner filed a response to Jones' objections arguing that Plaintiff's objections fail to offer any persuasive basis for the Court to reject the Magistrate Judge's recommendation.[64] The Commissioner cites the Seventh Circuit's decision in *McCavitt v. Kijakazi*, which recognizes that there is no constitutional bar to applying revised rules to a pending claim.[65] The Commissioner contends that the district court cases cited by Jones are distinguishable and do not address the specific argument at issue here.[66] The Commissioner asserts that the critical point is that "claims that rest on statutes or regulations are contingent, and the rules may change."[67]

According to the Commissioner, Plaintiff's contention that the Magistrate Judge improperly substituted her own judgment for that of the ALJ is unfounded.[68] The Commissioner argues that substantial evidence supported the ALJ's findings, and the ALJ did not err in declining to incorporate additional limitations related to Plaintiff's treatment.[69] The Commissioner asserts that "[n]either Plaintiff's June 29, 2020, arthroscopic surgery on his non-dominant left shoulder, nor his subsequent physical therapy establish the existence of additional ongoing functional limitations lasting or expected to last a duration of twelve months."[70] The Commissioner asserts

---

[64] Rec. Doc. 33 at 1.

[65] *Id.* at 4 (citing *McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021)).

[66] *Id.* (citing *Kokal v. Massanari*, 163 F.Supp.2d 1122, 1132 (N.D. Cal. 2001); *Pearson v. Commissioner of Soc. Sec. Admin.*, Case No. 22-1013, 2023 WL 1457513 (W.D. Ark. Feb. 1, 2023)).

[67] *Id.* (citing *McCavitt*, 6 F.4th at 694).

[68] *Id.* at 5.

[69] *Id.*

[70] *Id.*

that the fact Plaintiff went to physical therapy frequently after surgery "does not establish a medical necessity of ongoing physical therapy at that level of frequency on a permanent basis."[71]

### III. Standard of Review

**A.      *Review of the Magistrate Judge's Report and Recommendation***

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[72] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[73] A district court's review is limited to plain error of parts of the report which are not properly objected to.[74]

**B.      *Standard of Review of Commissioner's Final Decision on DIB and SSI Benefits***

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[75] Appellate review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[76] "Substantial evidence is more

---

[71] *Id.*

[72] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[73] *Id.*

[74] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[75] 42 U.S.C. § 405(g).

[76] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[77] The Court must review the whole record to determine if such evidence exists.[78] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[79] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[80] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[81]

## IV. Law and Analysis

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[82] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[83] The

---

[77] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[78] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[79] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[80] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[81] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[82] 42 U.S.C. § 423(d)(1)(A).

[83] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[84] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[85]

At step one, the ALJ concluded that Jones had not engaged in substantial gainful activity since December 10, 2019, the amended alleged onset date.[86] At step two, the ALJ concluded that Jones had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with radiculopathy, diabetes mellitus with neuropathy, and a left shoulder SLAP tear and tendinopathy.[87] At step three, the ALJ found that Jones did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[88]

At step four, the ALJ found that Jones had the RFC to perform light work with the following limitations: (1) he can only stand or walk four hours in an eight-hour work day; (2) he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs; (3) he can only occasionally stoop, kneel, crouch, crawl, or balance when walking on narrow, slippery,

---

[84] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[85] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[86] Adm. Rec. at 17.

[87] *Id.*

[88] *Id.* at 18.

or uneven surfaces; (4) he can only occasionally reach overhead, handle, finger, or feel with the non-dominant left upper extremity; (5) he must avoid exposure to workplace hazards, such as unprotected heights and dangerous moving machinery.[89] Considering these limitations, the ALJ found that Jones was unable to perform any past relevant work.[90] At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Jones could perform.[91] Accordingly, the ALJ concluded that Jones was not disabled from December 10, 2019 through the date of the decision.[92] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[93]

Jones raises three issues in this appeal: (1) the retroactive application of Listing 1.15 to his case violates the Fourteenth Amendment; (2) the ALJ erred by failing to offer any meaningful rationale explaining why the relevant Listing was not medically equaled; and (3) the ALJ erred by ignoring the effect of Jones' treatment on his ability to sustain full-time employment.[94] The Magistrate Judge found each arguments without merit,[95] and Jones objects to her findings on each issue.[96] Accordingly, the Court addresses each of these arguments in turn.

---

[89] *Id*. at 19.

[90] *Id*. at 21.

[91] *Id*. at 22.

[92] *Id*. at 23.

[93] *See Perez*, 415 F.3d at 461.

[94] Rec. Doc. 14. The Magistrate Judge addressed issues one and two together. The Court separates those issues here for clarity.

[95] Rec. Doc. 31.

[96] Rec. Doc. 32.

### A.    *Retroactive Application of Listing 1.15*

At step three of the sequential evaluation process, the ALJ must decide whether a claimant's impairment meets or equals one of the Listings.[97] The Listings describe "for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[98] Therefore, the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary."[99] If a claimant has an impairment that meets or medically equals a listing, the claimant is entitled to a finding of disability, with no further showing required at the subsequent steps of sequential evaluation process.[100] The claimant "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the [L]istings."[101]

On December 3, 2020, the Social Security Administration announced that it would revise the Listings for musculoskeletal disorders "effective April 2, 2021."[102] The Agency explained: "When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date."[103]

---

[97] 20 C.F.R. § 404.1520(a)(4)(iii).

[98] 20 C.F.R. § 416.925(a).

[99] *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

[100] *Id.*

[101] *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016).

[102] 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020).

[103] *Id.*

Therefore, under the terms of the Agency's own policy, the ALJ correctly applied the revised Listing 1.15 rather than the prior Listing 1.04.

Applying Listing 1.15, the ALJ found that it was not met because "there was no evidence to support the medical necessity of a hand-held assistive device nor an inability to use both upper extremities."[104] Jones admits that he does not use a hand-held assistive device and does not have the inability to use both upper extremities. Jones argues that the ALJ should have applied the prior Listing 1.04, which does not impose these requirements. Jones asserts that application of the revised Listing was impermissibly retroactive because it required him to meet more stringent standards to demonstrate disability.[105]

Retroactive legislation violates due process if it is "particularly harsh and oppressive" or "arbitrary and irrational."[106] In *Bowen v. Georgetown University Hospital*, the Supreme Court held that an agency must have an express congressional grant of authority to issue rules with retroactive effect.[107] The Commissioner does not argue that Congress authorized retroactive rulemaking by the Social Security Administration. Instead, the Commissioner asserts that the application of the new Listing to Jones' case does not have a retroactive effect. In *Landgraf v. USI Film Products*, the Supreme Court established a general rule that a new statute is applied to pending cases unless its application "would impair rights a party possessed when he acted, increase a party's liability

---

[104] Adm. Rec. at 22.

[105] Rec. Doc. 32 at 6.

[106] *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)

[107] 488 U.S. 204, 208 (1988).

for past conduct, or impose new duties with respect to transactions already completed."[108] When a new statute "authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."[109]

Although it does not appear that the Fifth Circuit has considered this issue, the majority of appellate courts to consider it have held that applying a new Listing to a pending Social Security application does not have impermissible retroactive effects under *Landgraf*.[110] Most recently, the United States Court of Appeals for the District of Columbia held that application of a new Listing for mental health conditions to a pending claim "was not retroactive as a matter of law."[111] The appellate court reasoned that the application of the new Listing did not impair the claimant's vested rights because "[t]he Social Security Act does not provide claimants with the right to have their claims adjudicated under any particular Listings" and instead "simply instruct[s] the Administration to award benefits only to claimants it finds to be disabled."[112] The court also found that application of the new Listing did not impose a new obligation or duty on the claimant and did not deny her "fair notice, disrupt reasonable reliance, or impair settled expectations."[113]

---

[108] *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994).

[109] *Id.* at 273.

[110] *Cox v. Kijakazi*, — F.4th —, 2023 WL 4832071 (D.C. Cir. July 28, 2023); *McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006) (en banc); *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003).

[111] *Cox*, 2023 WL 4832071, at *6.

[112] *Id.*

[113] *Id.* at *7–8.

In *Combs v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals also held that application of a new Listing to a pending claim does not have retroactive effect.[114] The court reasoned that "[t]he factors articulated in *Landgraf*—fair notice, reasonable reliance, and settled expectations—weigh against finding a retroactive effect."[115] The court explained that claimants do not develop impairments or assert disability claims because of agency procedures, and they have no settled expectation that the procedures will always be the same.[116] The court found that a change in step three of the evaluation process "is more procedural than substantive in nature" because "[t]he ultimate criteria of disability eligibility are not changed."[117]

Jones relies on *Kokal v. Massanari*. There, a judge in the Northern District of California held that where the new regulations deleting the obesity Listing went into effect after the ALJ's decision but before the Appeals Council's decision, it would be impermissibly retroactive to apply the new regulations to the claim.[118] The court reasoned that the claimant's rights would be substantively altered if the new regulation applied because it "would raise the bar on proof of a disability."[119]

---

[114] *Combs*, 459 F.3d at 646.

[115] *Id.*

[116] *Id.*

[117] *Id.* at 647.

[118] *Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1132 (N.D. Cal. 2001).

[119] *Id.* at 1131. *See also* Rec. Doc. 31 at 21 (Report and Recommendation addressing other cases holding that applying new listings to pending applications is impermissibly retroactive. *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016); *Cherry v. Barnhart*, 327 F. Supp. 2d 1347, 1358–59 (N.D. Okla. 2004); *Howard v. Berryhill*, No. 16-318, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017)). *Maines* is an unpublished Ninth Circuit case. There, the Ninth Circuit held that the ALJ should have considered the applicant's eligibility for benefits under the listings effective at the time of application absent express instruction from Congress to the contrary because the regulations provide that "[a] claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed." *Maines*, 666 F. App'x at 608. The Court finds the Ninth Circuit's opinion of little value here as

Jones contends that his rights were substantively altered by applying Listing 1.15, rather than the prior version Listing 1.04, to his claims because the new Listing raised the bar on proof of disability.[120] The Court is not persuaded by this argument. As the Sixth Circuit explained in *Combs*, a change in step three of the sequential evaluation process "is more procedural than substantive in nature" because "[t]he ultimate criteria of disability eligibility are not changed."[121]

Listing 1.15 went into effect after the state agency denied Jones' claim on reconsideration and after Mr. Jones filed his administrative appeal. However, at the time Jones filed his administrative appeal on February 23, 2021, the Agency had already announced that the new regulations would become effective as to all applications pending as of April 2, 2021. Listing 1.15 was in effect at the time of the August 5, 2021 hearing before the ALJ.

The Court finds that the factors articulated in *Landgraf*—fair notice, reasonable reliance, and settled expectations—weigh against finding a retroactive effect.[122] As the Sixth Circuit explained in *Combs*, claimants do not become impaired in reliance on the availability of the presumption in the Listing.[123] "Similarly, claimants have no settled expectation that the agency will use one as opposed to another algorithm for determining whether the statutory requirements are met."[124] "Finally, there is no basis for claimants to argue that they need 'fair notice' of a change

---

it is unpublished and not precedent. Additionally, the Ninth Circuit did not examine the *Landgraf* factors to determine retroactive effect.

[120] Rec. Doc. 32 at 2.

[121] *Combs*, 459 F.3d at 647.

[122] *Landgraf*, 511 U.S. at 270.

[123] *Combs*, 459 F.3d at 646.

[124] *Id.*

in the step three presumptions."[125] Though Listing 1.15 changed the analysis at step three of the sequential evaluation process, it did not change the fundamental statutory criteria for disability. Therefore, the Court concludes that application of Listing 1.15 to Jones' pending application was not retroactive as a matter of law.[126]

Jones also argues that the application of Listing 1.15 denied him equal protection under the law.[127] Jones asserts that "[t]he Commissioner has arbitrarily implemented material changes to the requirements for disability which would lead to disparate results for identical claimants solely due to the date their claims were decided."[128] This argument is premised on his belief that the amendment to the listing was retroactive. However, the Court concludes that application of Listing 1.15 to pending applications does not have retroactive effect. In *McCavitt v. Kijakazi*, the Seventh Circuit held that there is no constitutional bar to applying revised Social Security regulations to a pending claim.[129] The Seventh Circuit reasoned that "claims that rest on statutes or regulations are contingent, and the rules may change."[130] The court then noted that the agency specified that the amendments applied to all pending claims, and concluded: "Neither the Constitution nor any statute denies that option to the agency."[131]

---

[125] *Id.*

[126] *Cox*, 2023 WL 4832071, at *6.

[127] Rec. Doc. 32 at 3–4.

[128] *Id.* at 4.

[129] *McCavitt*, 6 F.4th at 694.

[130] *Id.*

[131] *Id.*

Jones also argues that the Magistrate Judge failed to consider unusual circumstances that made the application of the new Listing to Jones' claim unjust such as the fact that his application was pending for 16 months before Listing 1.15 went into effect.[132] Jones relies on *Pearson v. Commissioner, Social Security Administration*. In *Pearson*, the claimant was applying for a closed period of disability from April 13, 2016, through March 1, 2021, because he returned to substantial gainful activity thereafter.[133] A judge in the Western District of Arkansas held that because the claimant's final date of disability was before the April 4, 2021 effective date of the new musculoskeletal Listings, the ALJ should consider whether the claimant met the criteria of the old listing.[134] The court did not engage in a "retroactive effect" analysis under *Landgraf*.[135] The Court finds Jones' argument unpersuasive. Unlike the claimant in *Pearson*, Jones is not claiming a closed period of disability, where the entire period was before the new Listings went into effect. Jones has not demonstrated that any unusual circumstances are present here to depart from the weight of the authority holding that application of a new Listing to a pending claim does not have retroactive effect. For these reasons, the Court overrules Jones' objection and adopts the Magistrate Judge's recommendation that application of Listing 1.15 to Jones' claim does not have retroactive effects.

---

[132] Rec. Doc. 32 at 4–5.

[133] *Pearson v. Comm'r, Soc. Sec. Admin.*, No. 22-1013, 2023 WL 1457513, at *3 (W.D. Ark. Feb. 1, 2023).

[134] *Id.*

[135] *Id.*

**B.      *Did the ALJ Err by Failing to Consider Whether Jones Medically Equaled the Listing?***

Jones argues that the ALJ failed to offer any meaningful rationale explaining why the Listing was not medically equaled.[136] Addressing this issue, the ALJ stated:

> [N]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, the undersigned has also considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process.[137]

The claimant "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the [L]istings."[138] "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."[139] A claimant can show medical equivalence if he does "not exhibit one or more of the findings specified in the particular listing" or "exhibit[s] all the findings, but one or more of the findings is not as severe as specified in the particular findings."[140] In those situations, the regulations provide that the impairment is medically equivalent to that Listing if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria."[141]

---

[136] Rec. Doc. 32 at 6–9.

[137] Adm. Rec. at 19.

[138] *Zebley*, 493 U.S. at 531.

[139] *Whitehead*, 820 F.3d at 781.

[140] 20 C.F.R. § 404.1526(b)(1)(i)(A), (B).

[141] Rec. Doc. 32 at 8.

Jones argues that the ALJ should have found that his condition equaled the Listing because he has four disc herniations affecting both his neck and lower back, producing nerve root impingement and "marked" stenosis.[142] He asserts that he has both sensory and reflex loss, he has exhibited gait abnormalities, he has experienced tenderness and muscle spasm, and he has pathology involving his left shoulder that resulted in deficits affecting the use of his left arm and hand.[143] Jones has not demonstrated how these symptoms medically equal the Listing. The ALJ found that Jones did not meet the Listing because he did not have a documented need for a walker, or an inability to use one upper extremity along with a documented medical need for a one-handed, hand-held assistive device, or an inability to use both upper extremities.[144] When a claimant does not exhibit one of the findings specified in the Listing, he may be found to medically equal the Listing if he has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria."[145] Jones has not demonstrated that the symptoms he has identified are of equal medical significance to the required criteria. Although the medical records show that Jones has a mild limp,[146] they repeatedly state that he has a functional gait without use of an assistive device.[147] Therefore, substantial evidence supports the ALJ's conclusion that Jones does not meet or medically equal the Listing.

---

[142] *Id.*

[143] *Id.*

[144] Adm. Rec. at 19.

[145] 20 C.F.R. § 404.1526(b)(1)(ii).

[146] Adm. Rec. 20 (ALJ opinion finding "support for no more than restrictions to light work with reduced standing and walking to account for the claimant's positive testing and slight limp.").

[147] *Id.* at 698, 711, 714, 735, 741, 745, 749, 753, 757, 765.

*C.* ***Did the ALJ Err by Failing to Consider the Effect of Jones' Treatment on His Ability to Sustain Gainful Employment***

Jones argues that the ALJ erred in failing to consider his medically necessary treatment including epidural injections, nerve blocks, a left shoulder surgery, and physical therapy on his ability to sustain employment.[148] He asserts that he would have to miss all or part of a workday at least 38 times over 20 months since his disability onset date.[149]

To be found disabled, a Social Security claimant must have a severe medically determinable physical or mental impairment, or combination of impairments, that has lasted or is expected to last for a continuous period of at least 12 months.[150] The Fifth Circuit has recognized that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity."[151] In *Newton v. Apfel*, the record indicated that Newton visited the doctor, the hospital, and the emergency room frequently during the period in question, and her illness and its treatment occasionally caused her to sleep for several hours during the day.[152] The Fifth Circuit remanded the case to the ALJ for several reasons, including for consideration of "the effect of on-going treatment on Newton's ability to remain gainfully employed during the period of claimed disability."[153]

---

[148] Rec. Doc. 14-3 at 12.

[149] *Id.*

[150] 42 U.S.C. § 423(d)(1)(A).

[151] *Newton*, 209 F.3d at 449 (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).

[152] *Id.*

[153] *Id.*

In *Epps v. Harris*, the Fifth Circuit found that the ALJ's decision was not supported by substantial evidence "because she did not consider the disabling effect of the treatment regimen required by Epps' back injury."[154] Epps was undergoing traction three or four times per day for his back injury.[155] The Fifth Circuit found that this treatment program would significantly interrupt a normal, eight-hour workday.[156] Therefore, the court remanded the case "to the Secretary for a full evaluation of the effect of Epps' treatment regimen on his ability to perform his former job or to pursue any other substantial gainful employment."[157]

Unlike *Newton* and *Epps*, Jones has not shown that his treatment affected his ability to work on a sustained basis. The ALJ pointed out that Jones attended physical therapy two to three times per week.[158] This is in stark contrast to *Epps*, where the claimant was undergoing treatments three or four times per day, or *Newton*, where the claimant's illness and its treatment occasionally caused her to sleep for several hours during the day.

The Magistrate Judge found no indication from Jones' physical therapy record that such physical therapy would have interfered with his workday.[159] Jones takes issue with this statement, pointing to the vocational expert's testimony that "if the person had to miss all or part of a workday to receive medical treatment 38 times over a period of 20 months in addition to ordinary absences,"

---

[154] *Epps*, 624 F.2d at 1273.

[155] *Id.*

[156] *Id.*

[157] *Id.*

[158] Adm. Rec. 20.

[159] Rec. Doc. 31 at 29.

that person would not be able to maintain competitive employment.[160] However, the Magistrate Judge was simply pointing out that there is no indication from the physical therapy records to suggest that Jones would have needed to miss work to attend the appointments. Simply put, there is no indication that Jones would have been unable to schedule these physical therapy appointments two or three days per week during non-working hours. Accordingly, the Court finds no error in the ALJ's failure to incorporate additional limitations related to Jones treatment.

### V. Conclusion

For the foregoing reasons, the Court finds that application of Listing 1.15 to Jones' pending claim was not retroactive as a matter of law. The Court also finds that the ALJ's decision was based on substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's recommendation.

**IT IS FURTHER ORDERED** that Plaintiff Joshua Jones's Motion for Summary Judgment[161] is **DENIED** and the Commissioner's Motion for Summary Judgment[162] is **GRANTED**.

---

[160] Rec. Doc. 32 at 9.

[161] Rec. Doc. 14.

[162] Rec. Doc. 18.

**IT IS FURTHER ORDERED** that ALJ's decision on Plaintiff's application for benefits is **AFFIRMED** and this case is **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this 26th day of September, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

28